Good afternoon. I'm John Dacey, appearing on behalf of plaintiffs. May it please the court. We are asking, I'd like to reserve two minutes for rebuttal, with leeway. We believe that the circumstances in the private prisons in Arizona are much worse than what you see in the public facilities. And it's because of the ubiquitous profit motivation of the private prison corporations, which is a circumstance, a factor that's non-penalogical. And it affects everything, as we've described at length in the complaint. The question of standing, because this is a suit against the state for injunctive and prospective relief. And as I understand it, both of the named plaintiffs are no longer in the custody of the Arizona Department of Corrections at all. Is that correct? That is correct, as to the two individuals. As to the two individuals. So, do you concede that their claims are moot at this point? Their individual claims are that they would have standing to move for class certification on remand. Well, but if the class has already been certified, then the mootness, Sosna says, the mootness of the named plaintiff doesn't matter, and it's safe. But that's because the class exists. Here, the class doesn't exist, and they've lost their standing. So, I don't see how they can unremand as moot plaintiffs represent a class. So, they seem to be out of the case entirely, unless you tell me where I'm wrong. I think this court's decision in Pitts v. Terrible Herbst is a case that goes through a number of different procedural postures, and discusses old cases like Sosna, where the issue is either certification was denied, and the plaintiff's claim became moot, but both issues were on appeal, the merits and the class certification. There are other cases where the class certification has not even been moved yet. And the ultimate result of the Pitts case, I believe, is that because of the assertion of a putative class, the named plaintiff, even though their individual claim in Pitts was moot, the court recognized still having standing to go forward on behalf of the class for class certification purposes. The case discusses a number of other cases in different procedural postures. And I think it leads to the inescapable conclusion in the Ninth Circuit that our named plaintiffs in this case on remand would have standing to move for class certification. The second thing, of course, is the NAACP Arizona chapter is a plaintiff in this case, not just in its own right, but on behalf of members, members who would have standing to sue over the same circumstances as any other person that is incarcerated in private prisons through the department. Robert R. Reilly Well, what theories of standing for the NAACP were asserted below? Was it Hunt Associational, or was it Havens Realty, or both? Because it seemed like the district court just did it on Havens Realty. Robert R. Reilly We, the complaint, through I believe it's paragraphs 10 through 14, describes the basis for the NAACP to have direct standing because its own resources are diverted and its mission frustrated by the privatization. And secondly, pleads associational standing on behalf of members who are incarcerated in private prisons through the department. The district court found that they had a direct stake and that that was enough. And once satisfied that a plaintiff had standing to go forward, that standing issue, they didn't go into the second piece of the judge. Robert R. Reilly And the second piece, did you lead facts in the complaint that would establish that there were members who would have standing individually? That's one of the Hunt elements. Robert R. Reilly So that occurred through, I would say, the court's jurisdictional briefing request. The district court requested that the parties separately brief the issue of standing. And during that part of the proceedings, we did. And that included the affidavit of general counsel for the NAACP that specifically referred to members in private prisons through the department. So, yes, that was part of the proceedings below. It's outside the amended complaint, but as a jurisdictional matter, it's not. Robert R. Reilly It's in the record. Robert R. Reilly Excuse me? Robert R. Reilly It's in the record, and therefore... Robert R. Reilly  Robert R. Reilly And then on Havens Realty, does the NAACP, as in Havens, provide services to particular prisoners who would be subject to these problems, or that's not the particular theory? Robert R. Reilly The affidavit actually goes into that in terms of, as an example, discussing having to work with people that were in the private containment prison when that facility was closed by the department because of the mismanagement. So, yes, that is also part of the record below. Yvonne Perreault Counsel, I want to make sure that to give you a chance this afternoon to address your structural bias procedural due process claim. As I understand it, Arizona prohibits private prison staff or officials from being involved in discipline, imposing discipline, or in calculating credits, taking away credits. So, tell me your theory on how the private prison really extends the length of incarceration. Robert R. Reilly So, Judge, I'm going to ask the entire panel one favor. I am having a little bit of difficulty with new hearing aids. If you can speak close to the microphone, thank you. Yvonne Perreault Would you like me to repeat that? Robert R. Reilly Oh, much better. No, you don't need to repeat it. So, the district court order in footnote six specifically acknowledges that we have asserted two procedural due process claims, one being the lack of due process at the time of transfer or placement in a private prison. With regard to that, we think it's black letter law. Our clients were absolutely entitled to due process regardless of how the merits come out, and that's the Wilkinson case. But in answer to your question, Judge, so the court notes the two due process claims in the footnote, the second one being structural bias, and never returns to it. So, in the order of dismissal, that's dismissed the case with addresses the merits of the structural due process claim, which, of course, followed the filing of an amended complaint with additional factual allegations that track the district court's concerns with the original complaint. So, the district court never returned to that. Yvonne Perreault Right. Well, now we're here, and I've got the complaint in front of me. I'm not sure, based on the allegations of the complaint, that I understand how a structural bias due to the profit motive lengthens incarceration. So, that's an interesting theory. I'm not sure you have the allegations here. So, number one, I wanted you to address that. And number two, to the extent that the allegations are insufficient, do you have any additional facts that you would proffer if you were given an opportunity to amend this complaint again? And so, first of all, you know, we plead that the profit motive is ubiquitous. It affects every aspect, every kind of decision that's made inside a private prison wall, and that includes, for example. Yvonne Perreault Okay. Those are very vague allegations. I'm looking at the kind of what I understand to be the heart of your structural bias claim, and that the profit motive leads to COs and private prisons writing up inmates for discipline more frequently than they would be had they been incarcerated in state facilities, right? I don't understand the connection between that and the lengthening of their imprisonment. I think that's where you want to go, but Arizona law prohibits private prison staff from being involved in imposing discipline, calculating credits. And so, there's a bunch of steps missing in between, a bunch of allegations missing in between. So, I realize that we're at the dismissal stage. That's why I'm focusing on the allegations, the complaint. And I'm looking for proffers to what else you may have that's not  I mean, to look at the statute and where the power is granted and where it's not. What the statute says is different than the facts we've pled. And that's why we cited some of the things from the Parsons case, a perfect example of the department having to provide medical care and doesn't bring its private medical care contractors to compliance. The reports that we referenced in our complaint are examples of where private prisons were used and other state and federal authorities found that because of the severe higher incidence of incident writing and discipline findings that people incarcerated in the private prisons were losing early release credits, were spending more of their sentence. So, the Mississippi report, for example, found that prisoners were spending four to seven percent more of their time in prison compared to their counterparts in the public prisons. The Department of Justice report found not just that, but because the incident writing was much more severe because of the staffing problems, which led to much more violence, safety violations and the like. The New Mexico study refers to, I think it was the New Mexico one, where the incident reports and the finding of discipline was multiple of the public prison circumstances. We've pled Arizona's circumstances are similar and think about it from a common sensical standpoint. If the corporate culture is to write incident reports a lot because the longer people stay with us, the more money we make. If that's the corporate culture, then the officers who are not certified correctional officers write more reports and that immediately puts the... All right. How did the write up of the reports enhance the time in custody? Loss of early release credits. So, the COs write up the reports and then the investigation is triggered, right? And then are the Arizona Department of Corrections officials taking over at that point? And as the complaint states, the department doesn't supervise that effectively and rubber stamps. So, those are the facts pled in the complaint. And that affects early release credits, that affects what the record looks like in front of the Board of Clemency. And that also to challenge more of these incident reports considering the circumstance, it immediately puts the person on the defensive to challenge the person who's in charge of their life 24-7. I assume that conditions in prison probably vary even within state-run prisons. So, suppose it's prison A and prison B and prison A has worse conditions, higher incidents of reporting, more violence. Could then a prisoner in prison A make similar claims here saying, I should be in prison B because compared to prison B, prison A is inferior? Maybe. So, then it's not really about profit motive. You're just talking about conditions. No. If we're sticking just to the structural bias plan, then in that circumstance, what we're saying is these things are happening for non-penological reasons, profit. The circumstance of public to public, I would go look at the Wilkinson case in the procedural due process context. Yes, the person in that circumstance might have a right. It depends on whether the facts justify finding a protected due process interest in our view. Our complaint more than does that by the facts pled in supporting plausible claims. How far the structural bias argument goes? I mean, some jurisdictions have contracts with other jurisdictions to house their prisoners. Now, under the similar sort of argument, the receiving jurisdiction, which would get paid under the contract for taking them, arguably have the same motive to keep them and get more money rather than have them released and turned over. Does the same kind of structural bias argument apply to intergovernmental housing agreements? It would be different in kind in that at both ends of your hypothetical, you've got entities that are committed to societal purpose, to governmental purpose. Now, whether indeed an agency itself might abuse its status to enhance its revenues, that's a separate question. That might happen. If it did, I would suggest there might be a due process, such as in some of the forfeiture cases where the bias of an agency to enhance its revenues comes up. So, I'm not certain I've answered your question, Judge. So, in any event, we think that given the total control that the private prison has over the life of each person that is before them, the substantial reasons they have for profit motivation and that the bias is revealed in our amended complaint. I'm still struggling with the same problem. I mean, I understand your argument that the profit motive may affect behavior, right? That seems fairly obvious and that it may actually even result in a greater incidence of write-ups. But then if the state takes over all of the investigation and then calculates the credit and imposes discipline, there appears to be a allegations in the complaint. Well, where I think the court should return to is that we're at the Rule 12 stage, not the merit stage. And that what the complaint pleads is the things that we've been talking about are happening. And once assumed as true, in our view, that rises to a plausible due process claim. And the reports take it a step higher in terms of corroboration, which are also part of our factual statements. I'd like to return for a moment to the procedural due process claim. I mentioned the Wilkinson case. So, Wilkinson says that if there's a substantial due process liberty interest at risk, at substantial risk, and it's a significant and atypical hardship in the context of prison life, then the right to procedural due process is automatic. It doesn't matter whether you're not allowing due process at all. And our complaint pleads in a systemic manner, that's not present here. And we should win on that claim alone because the court required, and it's this missile order, that the plaintiffs prove harm. And the case law makes it clear. You don't have to have actual harm. It just has to be risk. I realize I'm down to a little less than two minutes with the court's leeway. I'd like to reserve a couple of minutes for rebuttal. All right. Good afternoon. My name is Nicholas Aceto, and I represent the director of the Arizona Department of Corrections, Rehabilitation, and Reentry. We were only able to talk about two of the substantive claims. So far, I'd like to go right at those two first. Judge Duane, you? Before you get there, Kim, I just asked you about the standing issue. What's your response to your opposing counsel's reliance on the Pitts case to say that even though the main plaintiff's individual claims are moved, they can still stay in the case even through remand for purposes of class certification? I disagree with that point, Your Honor. I think Sosna and the Supreme Court cases say the opposite. Here, there was no class certification until and unless there is a certified class. None of the putative class members have claims. And in order to certify a class, the main plaintiffs also have to have typicality in their own standing. They're no longer in the either an injunctive or claim for declaratory relief. That's all that's fled here. So if this were to go back on remand, those two plaintiffs are out. They cannot continue forward. I mean, but Pitts did seem to say, you know, the quote that they have in their brief is, even if the district court had not yet addressed the class certification issue, mooting the putative class representative's claims will not necessarily move the class action. So that seems a little bit in tension with what you just said. Perhaps, Your Honor, I disagree with that. I disagree to the extent that case allows a plaintiff whose claim is moot to then reassert the claim on a remand. I think the cases are legion going the other way, including Supreme Court cases. I think the Supreme Court cases more recently, TransUnion, discuss standing with respect to class plaintiffs and class members. I think that those control. On the structural bias claim, we maintain that the allegations in the First Amendment complaint are just absent and their theory is too attenuated. As you pointed out in Arizona, the decision makers are the employees of ADCRR. They are the ones who can only impose discipline. The privates are statutorily prohibited from imposing any discipline. Once there's a write-up, it gets transferred over to ADCRR. The DHL, disciplinary hearing officer, that's an ADCRR employee. They are the ones that review that and adjudicate those write-ups. If the inmate is not happy with that determination, they can then appeal it to a deputy warden for ADCRR. If they're not happy with the deputy warden's decision, they can appeal that all the way up to the director. That entire chain of command are ADCRR employees. So their theory, by simply having a motive to write up more inmates, it doesn't make sense and it's actually incompatible and inconsistent with not only the statute but with ADCRR's internal operations. Right. I think councils concede or at least contest the fact that the state is involved in imposing discipline and takes over the investigations of write-up. But the complaint does say that private prisons are delegated the power to write up prisoners for incidents and activities that affects among early things, their early release time credits. And so I think the theory that they're trying to lay out is that, whether they actually are the decision makers and adjudicators of the loss of credit, if you have a higher instance of write-ups, that leads to more investigations and then inevitably lead to greater punishment. And they attach a number of reports indicating that private prisons have more guilty findings on inmate discipline charges and selected categories of grievances. So there are inferences there, but we are at the motion to dismiss stage. So tell me why it's not enough or at least why it doesn't warrant an opportunity to amend, because as you know, amendment is liberally granted at this stage. Sure. Initially, they had two chances to amend. Their initial complaint, they were given a second chance to amend. Was the first one also subsequent to a motion to dismiss? Yes. Their original complaint, we moved to dismiss. It was dismissed without prejudice to amend. They amended it. We moved to dismiss the amended complaint, and that was dismissed as well. So they've had two cracks at this already. And I didn't hear counsel say anything about him being able to proffer more allegations to say this claim. But to answer your point, Your Honor, the inferences in our view are just, they're not reasonable. They're not supported by the allegations. What they refer to are reports. They refer to reports looking at facilities in New Mexico or out of New Mexico, Tennessee, and Mississippi. None of those reports address anything in Arizona. None of those reports address write-ups or the frequency of write-ups in Arizona. Actually, the New Mexico and Tennessee reports they cite, that report was done in 1999, more than 20 years ago. The Mississippi report that they keep talking about, that conducted a study of write-ups between 1999 and 2004. It's 2023. They filed their complaint just a few years ago. So whatever value those reports have, it's stale. It doesn't represent what is going on in Arizona and the Arizona private facilities. They also try to save it with their conclusory allegation that the review process is not meaningful. Well, in our view, that word meaningful is meaningless. There's no substance to that word. What does that word mean? How is it not meaningful? There's nothing in the complaint that shows that the write-up and review process in ADCRR private facilities are not meaningful. As the District Court pointed out twice, I believe, there's no allegations in the complaint that any, neither of the two name plaintiffs or any ADCRR inmate in a private facility was not given a full and fair review process or that the write-ups were made up. There's just nothing in the complaint. So for those reasons, we don't think that there's any merit to the structural bias claim, and they can't do anything to save it if there was going to be a remand on that claim. We briefly talked about the procedural due process claim, and that's their Sandin v. Conner, their Wilkinson claim. It's important to keep in mind that when the District Court dismissed that claim, it made a predicate ruling that it wasn't just the fact that the write-ups, the Court didn't just latch onto their meaningfully or meaningless write-up allegation. The Court actually compared the allegations in this amended complaint with the allegations in Wilkinson, and it determined that the allegations were woefully short. Unlike in Wilkinson, well, no social contact. They're in their facilities 23 hours a day. It's a supermax facility. That's just not the conditions at any of the privates in Arizona. The privates in Arizona are actually, most of them are just a minimum or medium custody facility. So that is a very glaring fact that existed in Wilkinson that does not exist in this case. The other fact that the automatically. There's nothing like that in ADC or our system. Again, going back to there, there could be more write-ups, and there's not a meaningful review, as the District Court noted. None of that really matters because it's unlike Wilkinson, where in that case, there was an automatic revocation of parole. So their theory that write-ups could potentially somehow down the road, if you had a CEO that had a strong motivation to help their employer, was writing up more write-ups. It's just too attenuated, and it doesn't reflect what the Supreme Court has held can support a procedural due process claim. Those are the only two claims we talked about today. I'd be happy to answer any questions regarding any of the other claims or any of the other rulings by the District Court. I don't have any questions. Jeff Collins, actually. Okay. Thank you. Thank you. The Wilkinson Court found that there were three prongs to look at in determining whether a protected due process interest was present. It wasn't limited to its facts. Our complaint satisfies those. And the judge below found that we had a protected liberty interest in his discussion of our procedural due process claim. That should have been the end of it. There was no requirement for harm. Regarding the remarks about stale reports, this is an example of not accepting the well-plaid facts in the complaint as true. It's trying to controvert those factual statements. And not saying there was meaningful review, the word meaningful, if it has meaning in any context, it's a very recognizable term in the context of due process. I'd like to go back to the structural due process and just pose a hypothetical to you. If you knew that the police officers on the beat in this town were paid for their time spent in writing citations and not paid for their time spent not writing citations, there would be a structural problem with the way the department is operating. And we submit that kind of structural bias is built into, baked into the way private prisons operate. And that is going to, whether it affects any individual case is not the issue. The case is the design itself. Those are the ends of my comments on rebuttal. All right. Thank you, counsel. We've got the arguments. Thank you to both sides. The matter is submitted and court is in recess until tomorrow morning. Thank you.
judges: NGUYEN, COLLINS, LEE